Filed 4/17/14  P. v. Weisenberg CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>KAYLEE ANN WEISENBERG,<br><br>    Defendant and Appellant. | 2d Crim. No. B241198<br>(Super. Ct. No. F4485555)<br>(San Luis Obispo County) |

Kaylee Ann Weisenberg was speeding.  At the time her blood level of methamphetamine was within a toxic range.  She lost control of her car and struck and killed a California Highway Patrol (CHP) Officer.  Weisenberg had numerous traffic citations and was driving on a suspended license.  She had also been involved in a number of prior accidents.  Her friends said her driving frightened them.

A jury found Weisenberg guilty of second degree murder (Pen. Code, §§ 187/189) and gross vehicular manslaughter while intoxicated (*id.*, § 191.5, subd. (a)). The court sentenced her to 15 years to life.

On appeal, Weisenberg contends she was denied effective assistance of counsel, denied her right to testify, the prosecution failed to provide exculpatory evidence and cumulative error deprived her of due process.  We affirm.

FACTS

South River Road is a two-lane curved rural road in San Luis Obispo County. The posted speed limit is 55 miles per hour. On June 27, 2010, at about 6:15 p.m., CHP Officer Bret Oswald stopped his patrol car behind a car that had been abandoned on the side of the southbound lane. Oswald placed orange cones around his car and illuminated his car's overhead lights.

Ronald Veillette was driving northbound on the road at about 6:15 p.m. He saw the abandoned car and the patrol car parked on the side of the road. He was "quite a ways" from the parked cars when he first saw them. He had no trouble avoiding the cars or the officer.

Doris Rota was also driving northbound. She saw the parked cars and the orange cones. She said there was no shoulder where the patrol car was parked. The patrol car was "squarely on the road." Nevertheless, Rota had no trouble driving northbound. Nothing was in the northbound lanes.

Weisenberg was traveling northbound on South River Road above the speed limit with the car's sound system playing very loudly. She was under the influence of methamphetamine. When she entered a curve, she lost control of her car, crossed over to the southbound lanes, collided with Oswald's patrol car and rebounded into Oswald. Oswald died of his injuries.

Robert and Christine Miller saw Weisenberg's car hit Oswald. They stopped to help. They saw Weisenberg get out of her car and kneel in the weeds. She appeared distraught, hysterical. She kept saying something like, "Oh my God."

Jose Acevedo testified that at about 10:00 a.m., on the day Oswald was killed, he smoked methamphetamine with Weisenberg. Brittany Fletcher testified she was at Weisenberg's home during the day on the date of the incident. She saw Weisenberg take out a pipe. She believed Weisenberg intended to smoke methamphetamine, so she left the house.

2

*INVESTIGATION*

Investigator Scott Peterson performed accident reconstruction with the Multiple Disciplinary Accident Investigation Team (MAIT). He concluded Weisenberg was traveling on the road at 80 miles per hour and that her car was going 68 miles per hour when she hit Oswald.

CHP Officer Phillip Knox interviewed Weisenberg at the hospital. He said she was going approximately 62 miles per hour when she entered a curve. She saw Oswald standing beside his patrol car. She panicked and hit the brakes hard. Her car went into the opposite lane and struck Oswald. Knox testified Weisenberg did not "show any kind of remorse towards the officer or any concern about the officer's condition at the time." She did not inquire about Oswald's condition. Knox said she had a slur in her speech and spoke lethargically.

CHP Officer David Reed went to the hospital to evaluate Weisenberg. He performed three types of nystagmus tests, as well as other tests, to determine whether her ability to drive safely was impaired. He completed the evaluation at about 9:00 p.m. Weisenberg did not show signs of impairment at that time. Reed testified that does not mean Weisenberg was unimpaired at the time of the collision.

*TOXICOLOGY*

Bill Posey, a forensic toxicologist, testified the therapeutic range for methamphetamine is between .01 and .05 milliliters per liter of blood. The potentially toxic range is from .2 to .3 milliliters per liter of blood. On the evening of the accident, Weisenberg's blood samples showed levels between .33 and .5, which is well within the potentially toxic range. Studies show impairment occurs at levels greater than .2 milliliters.

Forensic toxicologist, Dr. Barry Logan, testified that methamphetamine could cause driver impairment in two ways. First, in the "acute phase" the driver has difficulty focusing on more than one task and has difficulty receiving and understanding information coming from her environment. Second, in the "withdrawal" or "crash" phase the driver becomes sleepy and inattentive. Levels above .2 milliliters are potentially

3

toxic and have adverse affects.  Logan opined Weisenberg was under the influence at the time of the crash.

### *DRIVING HABITS*

Shane Parker and Weisenberg were friends.  Parker believed Weisenberg drove too fast.  Her driving scared him a little.  He warned her about driving so fast.

Melissa Cook and Victoria Hall went for a ride with Weisenberg in February 2004.  On a winding road, Weisenberg lost control of her car and went off the road into a resident's yard.  Cook testified Weisenberg was going too fast and took the turn too wide.  Weisenberg did not want her parents to know how the accident happened.  She decided to tell her parents she hit a rock in the road.  She moved a rock into the road to support her story.

Darrel King was Weisenberg's friend.  He rode with her once or twice and believed she was generally a safe driver.  He acknowledged telling an investigator, however, that he rode with her once or twice on South River Road.  He said she "definitely drives kind of crazy" and "[i]f there was somebody there she would have hit them."

Emiterio Guerrero had been friends with Weisenberg for about two years.  On one occasion, Weisenberg drove too fast.  He told her if she did not slow down he would jump out at the next stop sign.  Guerrero saw Weisenberg just as she was leaving her house on the day of the incident.  She seemed upset and irritated.

Daniel Machado and Weisenberg had a baby together.  Machado testified Weisenberg drove South River Road "to take out her anger and . . . relieve some stuff."  He told an investigator that if she is in an angry mood she drives too fast.  Machado testified that he modified Weisenberg's car.  A driver did not need to step on the brakes hard to cause the wheels to lock.

Jose Acevedo described Weisenberg as his best friend.  He told an investigator that Weisenberg drives back roads such as South River Road to "blow off steam."  He said she drives "anywhere from 75 to 90."  Acevedo testified that he was

4

under the influence when he spoke to the investigator. The investigator said Acevedo appeared to be under the influence, but understood the questions and was able to respond.

## CITATION HISTORY

Between December 2006 and February 2009, Weisenberg was cited for driving 95 miles per hour in a 65-mile per hour zone, 85 miles per hour in a 65-mile per hour zone, 91 miles per hour and 80 miles per hour in a 65-mile per hour zone. In addition, Weisenberg was cited for failure to yield at a stop sign, failure to stop at a stop sign, failure to stop at a red light and playing music that could be heard 50 feet from her car. Between July 2008 and June 2010 Weisenberg's license had been suspended four times. It was suspended at the time of the incident.

## COLLISION HISTORY

In November 2004 Weisenberg rear-ended a car driven by Sandra Holbrook and containing Holbrook's daughter, Corissa. Holbrook was injured in the accident. She looked in the rear view mirror and saw Weisenberg talking on her phone and heard loud music coming from her car. Corissa went to Weisenberg's car and told her to get off the phone, turn down the loud music and call 911.

In August 2008, Weisenberg clipped the front quarter of a car driven by Tony Caviness. Weisenberg did not stop. She drove through a parking lot. Caviness followed her and called 911. Eventually, Weisenberg stopped.

In March 2010 Weisenberg was in a fast food drive-through lane. She backed her car into a car driven by Luis Castillas. When Castillas got out of his car to see if a baby in Weisenberg's car was all right, Weisenberg berated him and accused him of causing the collision.

## WENDI MELOON

Wendi Meloon shared a jail cell with Weisenberg. Meloon admitted she was a methamphetamine user. She said Weisenberg appeared to be in the withdrawal phase. All she did was sleep and eat. That is consistent with the "crash phase." Meloon said Weisenberg told her she was on her way to her dealer's house to "re-up," when she hit Oswald. Meloon said Weisenberg's mood seemed "casual" and "didn't seem

5

remorseful."  Meloon denied that any promises were made to her or that she expects anything in exchange for her testimony.

*DEFENSE CASE*

Kenneth Brown was a hospital chaplain.  He spoke with Weisenberg when she was in the hospital after the accident.  Weisenberg asked if Oswald had died.  Brown told her he could not discuss the matter.  Weisenberg asked Brown if she was in trouble.  Brown did not know the details of the incident.  Brown said Weisenberg showed no ill-will toward Oswald.  Brown and Weisenberg prayed together for Oswald.

Neemah Yamin Esfandiary has a doctorate in pharmacy.  He testified that toxicologists, such as the prosecution's experts, primarily work with laboratory machines.  Esfandiary's education exposed him to working with actual patients.  He testified that methamphetamine can heighten focus and increase cognitive thinking.  He said there is no direct correlation between specific drug levels and a specific degree of impairment.  The level of methamphetamine in the blood stream does not necessarily show that a person is under the influence.  Whether a person would be under the influence depends on the individual.

Mallie Donohoe is a traffic accident reconstruction expert.  Based on his study of the accident, including tire marks and the "at-rest" position of the vehicles, Donohoe opined that Weisenberg was traveling 63 or 64 miles per hour prior to breaking.

*MOTION FOR NEW TRIAL*

Weisenberg moved for a new trial based on incompetence of counsel.  The motion was supported by affidavits.  In denying the motion, the trial court remarked that trial counsel, Thomas McCormick, has serious medical problems and is unavailable to explain his decisions.  Even without the benefit of counsel's explanations the court concluded counsel acted competently.  The court stated "this was not a good case for the defense."  The court pointed to evidence that Weisenberg has a history of prior traffic collisions; four prior speeding citations for speeds between 80 and 91 miles per hour; multiple driver's license suspension, including a suspension at the time she killed Oswald; an extensive history of methamphetamine use; and a CHP accident investigation that

6

concluded she was traveling approximately 30 miles per hour over the speed limit on a dangerous winding road at the time she killed Oswald. The court concluded "Mr. McCormick was not dealt a good hand. But Ms. Weisenberg created all of these problems by her past recklessness and wanton conduct. Mr. McCormick did his best. I believe he acted in a manner expected of competent counsel acting as a diligent advocate. I'm not convinced that any of the claimed [omissions], even if true, would have made it reasonably probable that the jury would have reached a more favorable verdict for Ms. Weisenberg. Accordingly, the court will deny the defense motion for a new trial."

DISCUSSION

I.

Weisenberg contends she was denied effective assistance of counsel.

A defendant claiming ineffective assistance of counsel has the burden of demonstrating both that his counsel's performance was deficient when measured against the standard of a reasonably competent attorney and that counsel's deficient performance resulted in prejudice to the defendant. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-689, 691-692.) When a claim of ineffective assistance is made on direct appeal, and the record does not show the reason for counsel's challenged actions or omissions, the conviction must be upheld unless there could be no satisfactory explanation. (*People v. Anderson* (2001) 25 Cal.4th 543, 569.) To show prejudice, a defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. (*Ibid.*)

*(a) Failure to Investigate*

Weisenberg claims her counsel failed to conduct any investigation. The claim is supported by the declaration of Weisenberg's court-appointed investigator. The investigator stated he went on his own to speak to Weisenberg, but did no further work for McCormick. Other persons contacted by Weisenberg's current counsel declared that McCormick did not interview or speak to them.

Weisenberg argues McCormick's failure to investigate denied her the right to counsel as follows:

7

*(a)  Wendi Meloon*

Meloon was Weisenberg's cell mate.  Weisenberg complains Meloon was allowed to testify without objection that Weisenberg was in the "crash phase" of methamphetamine use.  Weisenberg claims that McCormick should have objected because Meloon was not identified as an expert, offered as an expert, or deemed an expert by the trial court.

But Meloon identified herself as a methamphetamine user.  One does not need an academic degree to qualify as an expert.  Had McCormick objected, Meloon might well have qualified.  Weisenberg cites no authority that a drug user is not qualified to testify about the effect of the drug she uses.

Moreover, Meloon was far from the most credible witness to testify about Weisenberg's methamphetamine use.  Two expert toxicologists testified a blood sample taken from Weisenberg, shortly after the crash, showed she had toxic amounts of methamphetamine in her blood.  It is highly unlikely the jury would have reached a different result had Meloon not testified.

Weisenberg complains Meloon testified without objection that Weisenberg told her she was on her way to her dealer to "re-up" her methamphetamine supply.  But Weisenberg does not specify what objection McCormick should have raised.

In any event, even if Meloon's statement had been excluded, there is no reasonable probability it would have made a difference.  Weisenberg's problem was not Meloon's testimony she was on her way to "re-up" her methamphetamine supply.  Instead, her problem was that she was driving with a toxic level of methamphetamine in her blood.

Weisenberg complains that Meloon testified Weisenberg did not seem remorseful.  Weisenberg argues no one can testify to what someone else is thinking or feeling.  But Weisenberg cites no authority that one cannot testify about how another person appears to be feeling.  How another person appears to feel is a judgment everyone makes every day.

8

Weisenberg complains that McCormick failed to review the discovery provided by the prosecution. She claims that had McCormick done so, he would have learned that Meloon voluntarily went to the police to inform on Weisenberg. Meloon told a CHP investigator that she needed her current felony charge reduced to a misdemeanor. She said a felony would cause her to lose financial aid for her child and housing assistance. The investigator told her that he could not promise her anything. But if what she has to say proves useful the district attorney might give her some consideration. In September 2010 Meloon's felony charge was dismissed and she pled no contest to a misdemeanor. She testified against Weisenberg in July 2011, and denied any promises were made to her in exchange for her testimony.

McCormick did not cross-examine Meloon about seeking a deal in return for her information, nor did he apparently know she had received a deal.

But the plea bargain of September 2010 was completed months prior to Meloon's testimony. Weisenberg points to nothing about the plea bargain that was contingent on her testimony. Moreover, the jury knew Meloon was a methamphetamine user who was in jail on a drug charge. The jury would not be so naïve as to believe Meloon was testifying as a good citizen who wanted only to see justice done. It is likely the jury would know she was seeking some favor in exchange for her testimony for the prosecution. Meloon's bias was obvious.

Weisenberg complains McCormick failed to discover witnesses who would counter Meloon's testimony. A former cell mate and a family friend would have testified Weisenberg showed remorse. Other witnesses would have testified Weisenberg was not on her way to her dealer to "re-up" her methamphetamine supply at the time of the crash. But there are many valid reasons that do not appear of record why counsel might not call a witness. Because the reasons do not appear of record, the claim of incompetence cannot be raised on direct appeal. (*People v. Anderson*, *supra*, 25 Cal.4th at p. 569.)

Moreover, lack of remorse or the reason Weisenberg was driving are not elements of murder. Even if McCormick had been able to exclude Meloon's testimony entirely, the evidence against Weisenberg would still be overwhelming. That evidence

9

includes a toxic level of methamphetamine in her blood; her speed at the time of the crash; her traffic citation record; her accident record; and her history of reckless driving.

*(b)  Failures Relating to Prior Accidents and Speeding Tickets*

Weisenberg complains McCormick failed to object to evidence that she placed a rock in the road to make an accident look like it was not caused by speeding. She claims the evidence was irrelevant and made her look like she has a bad moral character.  But what makes Weisenberg look like she has a bad moral character is evidence that she drives in a reckless manner.  There is no reasonable probability that evidence she placed a rock in the road to cover up her recklesness affected the jury's verdict.

Similarly, the failure to call Weisenberg's father to testify that after she hit the Holbrooks, she was shaken and sorry, is unlikely to have made a difference.  The fact remains Weisenberg has been in an inordinate number of accidents.

Weisenberg argues McCormick failed to call Stacey Marsh.  Marsh would have testified she is aware of the highways on which Weisenberg received some of her speeding tickets.  Marsh would have said many people speed on those highways and she herself has received speeding tickets on those highways.

Marsh's testimony would tell the jury a little more than what they already know - many people speed and some get citations.  It would not have detracted from Weisenberg's record of multiple speeding violations, some in excess of 90 miles per hour; multiple license suspensions; multiple accidents; and the testimony of friends that her driving frightened them.

*(c)  Failure to Prepare Experts*

Weisenberg claims McCormick did not adequately prepare defense accident reconstruction expert, Malli Donohoe.  Donohoe testified Weisenberg was going 63 miles per hour at the time of the collision, that still puts her over the 55 miles per hour speed limit.  Weisenberg argues Donohoe did not have time to prepare a report, only visited the scene once, and sent only two emails.  She suggests McCormick did not have time to consider Donohoe's testimony.

10

But Weisenberg points to nothing that shows Donohoe or any other expert would have come to a more favorable conclusion given ample time to prepare and consult. Nor does she point to anything that shows a reasonable probability of a more favorable verdict had McCormick not called Donohoe.

At trial, McCormick called pharmacist Neemah Yamin Esfandiary to counter the testimony of two toxicologists called by the prosecution. Weisenberg argues Esfandiary was far from qualified to counter the testimony of the toxicologists.

But Weisenberg points to nothing to show any other expert would have been more effective. Ironically, Weisenberg's best witness was CHP Officer David Reed, called by the prosecution. Reed testified he evaluated Weisenberg at 9:00 p.m., on the day of the collision, and she showed no signs of impairment. Apparently, not even Reed's testimony was sufficient to convince the jury that Weisenberg was not under the influence.

*(d) Other Instances of Claimed Ineffective Assistance*

McCormick failed to make a motion to suppress the statements of witnesses who claimed they were coerced by CHP investigators. But Weisenberg fails to demonstrate that any such motion would have been successful.

In cross-examining a police officer, McCormick's co-counsel inadvertently elicited that the officer remembered Weisenberg from a prior injury accident in which she was at fault. The officer also testified that Weisenberg asked the victim not to call the police. But given the totality of Weisenberg's driving history, one accident more or less, even one in which she asked the victim not to call the police, would not make a difference in the verdict.

McCormick said the county would not pay for an accident reconstruction expert. But Weisenberg in fact had an accident reconstruction expert and an expert on the effects of methamphetamine. She points to nothing that shows any other expert, no matter how well financed, would have produced a more favorable result.

Weisenberg complains that McCormick failed to call character witnesses. The witnesses would testify Weisenberg is not the type of person who would drive with

11

conscious disregard for human life or indifference as to the consequences of her actions. But the evidence that speaks louder than any character witness is Weisenberg's driving history and that at the time of the accident she was driving on a suspended license and speeding with a toxic amount of methamphetamine in her blood. There is no reasonable probability that character witnesses would have produced a more favorable result.

Similarly, Weisenberg complains McCormick failed to call witnesses who would testify she is a good driver. But any such testimony would be overwhelmed by evidence of Weisenberg's driving history, including numerous traffic citations and traffic accidents.

Weisenberg complains McCormick failed to object to evidence of her pregnancy. Officer Knox testified Weisenberg told him she was pregnant when he spoke to her at the hospital on the night of the collision. Weisenberg claims McCormick failed to exclude the testimony by motion in limine or to introduce evidence Weisenberg only learned she was pregnant when she was at the hospital. Weisenberg believes Knox testimony made it appear she took drugs in spite of knowing she was pregnant. But Weisenberg fails to show that she would have had a more favorable result had Knox not made a brief reference to the irrelevant matter of her pregnancy.

Weisenberg complains about McCormick's co-counsel's cross-examination of Christine Miller. Miller testified that Weisenberg was driving too fast when she lost control and hit Oswald. Co-counsel failed to ask Miller about the 65 to 70 miles per hour estimate of Weisenberg's speed she gave at the preliminary hearing. This estimate would have supported the 63 to 64 miles per hour estimate given by Donohoe, Weisenberg's expert. In addition, Miller's description at the preliminary hearing of what happened to Oswald's body after Weisenberg hit him was closer to Donohoe's opinion than it was to the prosecution's expert's opinion. Co-counsel failed to ask Miller about this on cross-examination.

But there are strategic reasons for not raising the issues on cross-examination. First, Miller's estimate of 65 to 70 miles per hour was even higher than Donohoe's estimate. Second, the defense would not want the jury to dwell on any more

than necessary, on the grizzly image of what happened to Oswald's body after Weisenberg hit him.

In any event, by all accounts, Weisenberg was speeding when she lost control of her car and hit Oswald. There is no reasonable probability Weisenberg would have obtained a more favorable result had her counsel cross-examined Miller on Weisenberg's speed and the trajectory of Oswald's body.

Weisenberg complains McCormick did not adequately raise the issue of Oswald's fault. He introduced no evidence of the proper policies and procedures Oswald should have followed. She claims that Oswald would not have been hit had he not been in the roadway.

The jury was instructed that if Weisenberg's actions were a "substantial factor" in causing Oswald's death, then she is legally responsible, even if Oswald failed to use reasonable care. (CALCRIM No. 620.)

Assuming Oswald was standing in the roadway, he was standing in the southbound lane. Weisenberg was travelling in the northbound lane when she lost control of her car, crossed over into the southbound lane and hit Oswald. Had Weisenberg not been speeding and lost control of her car, she would not have crossed over into the southbound lane. Even if Oswald was negligent, any reasonable juror would have found Weisenberg's actions were a substantial factor in his death.

## II.

Weisenberg contends she was denied her right to testify. She claims McCormick failed to advise her of that right.

Weisenberg ignores that the trial court expressly found her claim not to be credible.

Moreover, Weisenberg raised her right to testify for the first time in her motion for a new trial. A defendant has the right to testify even over her counsel's objection. (*People v. Hayes* (1991) 229 Cal.App.3d 1226, 1231.) But the right to testify must be timely and adequately asserted. (*Ibid.*) A defendant cannot wait until the

13

outcome of the trial and seek reversal based on her claim she was deprived of her right to testify. (*Id.*, at pp. 1231-1232; *People v. Enraca* (2012) 53 Cal.4th 735, 762-763.)

III.

Weisenberg contends the prosecution failed to provide her with exculpatory evidence.

In *Brady v. Maryland* (1963) 373 U.S. 83, 87, the Supreme Court held the prosecution must disclose to the defense any evidence that is favorable to the accused and is not material on either guilt or punishment. Failure to do so violates the accused's constitution right to due process. (*Id.*, at pp. 86-87.) Favorable evidence includes evidence that helps the defense or hurts the prosecution, including evidence that impeaches a prosecution witness. (*People v. Hoyos* (2007) 41 Cal.4th 872, 917-918.) Evidence is material only where there is a reasonable probability that disclosure of the evidence would have produced a different verdict. (*Ibid.*) A reasonable probability is a probability sufficient to undermine confidence in the outcome. (*Ibid.*) The defendant has the burden of showing materiality. (*Id.*, at p. 918.)

Weisenberg argues the prosecution committed *Brady* error by failing to disclose Meloon's criminal conduct. Weisenberg concedes, however, that McCormick was put on notice of charges against Meloon and the circumstances through a DVD and transcript of Meloon's interview with an investigator. She complains the information was not disclosed in any other manner. But *Brady* does not require that the information be disclosed in any particular form or manner. There is no *Brady* error.

Weisenberg also argues that the prosecution failed to disclose Meloon worked as an informant with the police and received benefits by the district attorney's office. In response to the motion for a new trial, the People conceded that Meloon made three controlled drug buys for the Sheriff's Department. Her felony charge was dropped and she was allowed to plead guilty to a misdemeanor. But the prosecutor declared she ceased being an informant more than 10 months prior to her testimony at trial.

The evidence was not material. At the time Meloon testified she had ceased being an informant and had no charges pending. Weisenberg points to nothing

14

Meloon had to gain by her testimony. It is not reasonably probable Weisenberg would have obtained a better result had the information been disclosed.

Moreover, as we have pointed out, Meloon's testimony in general was not crucial to the prosecution's case. The other evidence against Weisenberg was so overwhelming, the result would have been the same had Meloon never testified.

IV.

Weisenberg contends cumulative error denied her due process.

Weisenberg was not convicted of murder because her counsel's performance was inadequate or because the prosecution failed to provide discovery. She was convicted because the evidence was overwhelmingly against her. She was not denied due process.

The judgment is affirmed.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

YEGAN, J.

PERREN, J.

15

John A. Trice, Judge

Superior Court County of San Luis Obispo

_____

Angelyn Gates for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, David A. Voet, Deputy Attorney General, for Plaintiff and Respondent.